UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JIMMY D. REES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:17-CV-588-JD-MGG |
| | ) |
| CORIZON MEDICAL SERVICES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Jimmy D. Rees, a prisoner without a lawyer, filed a complaint against seven defendants alleging that he has received inadequate medical care in violation of the Eighth Amendment. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). However, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. "In order to state a claim under § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

Rees is an inmate within the Indiana Department of Correction and is currently housed at the Miami Correctional Facility (Miami). When Rees arrived at Miami on December 28, 2015, he immediately sought medical care due to tongue and mouth pain. On January 4, 2016, he saw a dentist, Dr. Matthew Hornaday, and a sore the size of a pencil eraser was identified on his

tongue. He was referred to Dr. Alderman, a dentist at the Indiana Youth Center (IYC), and was transported there on January 20, 2016, for a biopsy. Rees returned to Miami. Several weeks after the biopsy, on February 24, 2016, Dr. Hornaday told Rees the biopsy was "ok." Rees told Dr. Hornaday that his tongue was still painful, preventing him from eating or sleeping, but nothing was done to alleviate Rees' pain.

Over the next five months, Rees repeatedly requested medical care for his condition, but he received no treatment until July 27, 2016, when he saw Dr. Hornaday again. The sore in Rees' mouth was bigger, and Dr. Hornaday decided to send him back to IYC to see Dr. Alderman. On August 31, 2016, Rees was seen by Dr. Alderman again. At some point (presumably during his visit with Dr. Alderman), Rees learned that the results of the earlier biopsy were not "ok," but "C/W Squamous Papilloma."[1] Dr. Alderman excised the lesion on Rees' tongue, and he recommended that Rees use Fluocinonide,[2] a topical steroid. Rees was returned to Miami. Dr. Hornaday spoke with Miami's medical director, Dr. Marandet, and Rees believed that the topical steroid Dr. Alderman had prescribed was ordered.

On September 8, 2016, Rees saw Dr. Hornaday again, and Dr. Hornaday stated that the area of the biopsy had healed well, although Rees disputes this conclusion. On both September 13, 2016, and September 15, 2016, Rees requested medical care. At that point, he had not yet received the topical steroid that Dr. Alderman ordered two weeks earlier. When he did finally get the topical steroid, on September 21, 2016, he noticed that it said "for external use only" and one

---

[1] Oral squamous papillomas are lesions associated with human papilloma virus. They are usually benign and painless. The treatment of choice is surgical removal. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4260387/ (last visited Feb. 21, 2018)("Early diagnosis and surgical excision should be performed to avoid further complications.").

[2] "Fluocinonide is used to treat the itching, redness, dryness, crusting, scaling, inflammation, and discomfort of various skin conditions." https://medlineplus.gov/druginfo/meds/a601054.html (last visited Feb. 21, 2018).

of the nurses told him not to use it and to see the doctor. Thereafter, Dr. Hornaday told him to use the medication in his mouth despite the label. Rees followed Dr. Hornaday's directions, but he became very sick and the condition of his tongue worsened.

On October 26, 2016, he again sought medical care, indicating that he was in pain and could not eat. He saw Nurse Lynn Frye and Dr. Hornaday. Dr. Hornaday told Nurse Frye that there was nothing wrong with Rees' tongue and berated Rees for continuing to complain. Nurse Frye and Dr. Hornaday referred Rees to Dr. Marandet. Dr. Marandet saw Rees the same day and concluded that Rees needed to be seen by Dr. Alderman again. Dr. Marandet also prescribed Mary's Magic Potion Mouthwash, along with the same topical steroid that had made Rees sick previously.

Rees continued to request medical care every two weeks, but he was not seen again until December 15, 2016. At that time, Dr. Marandet ordered more Mary's Magic Potion Mouthwash even though it was not working. He also prescribed Ultram for pain. The Ultram, however, made Rees very sick, so he only took one dose.

Rees submitted yet another health care request on December 19, 2016, claiming he remained in pain, could not eat or sleep, and his tongue was getting worse. He asked to see an outside specialist. Dr. Marandet told him he would be going out for an approved consultation, but the consultation never occurred. Rees also requested medical care on March 28, 2017, and April 8, 2017, but he received no medical attention. On June 14, 2017, Dr. Marandet ordered Prednisone and Tylenol 3 for pain. At the time the complaint was drafted, Rees reported that his tongue had not improved.

Rees has sued seven defendants: Dr. Hornaday, Dr. Alderman, Dr. Marandet, Nurse Frye, Director of Nursing Roberta Gwillim, Corizon Medical Services (Corizon), and Wexford Health

Sources, Inc. (Wexford). He alleges that each of the defendants were either deliberately indifferent to his pain and suffering, or are responsible for the actions of their employees. He seeks compensatory and punitive damages. He also requests that he be provided with dentures.

In medical cases, the Constitution is violated only when a defendant was deliberately indifferent to an inmate's serious medical needs.[3] *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Rees has alleged a serious medical condition: his condition caused pain for an extended period of time and required medical treatment.

"[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted). "Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to show that a defendant merely failed to act

---

[3] Although Rees claims that the defendants have violated his Eighth Amendment rights, he was a pre-trial detainee when these events occurred. "Although the Eighth Amendment applies only to convicted persons, pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause. Accordingly, [courts] apply the same legal standards to deliberate indifference claims brought under either the Eighth or Fourteenth Amendment." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). *See also Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 554 n. 31 (7th Cir. 2016) (clarifying that *Kingsley v. Hendrickson*, 576 U.S. __, __; 135 S.Ct. 2466 (2015) did not change the applicability of the Eighth Amendment standard to pre-trial detainee deliberate indifference claims).

4

reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Even incompetence does not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000). Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

First, Rees sues the three doctors he saw for his tongue and mouth pain. Giving Rees the inferences to which he is entitled at this stage, he has alleged that Dr. Hornaday was deliberately indifferent to a serious medical need with respect to his tongue and mouth pain. Dr. Hornaday told Rees his biopsy results were okay without mentioning that the findings were consistent with squamous papilloma. And, on February 24, 2016, Rees complained of pain to Dr. Hornaday but nothing was done to alleviate Rees' pain. It can be plausibly inferred that Dr. Hornaday was aware of and ignored at least some of Rees' numerous requests for medical treatment between February 2016 and April 8, 2017. When Rees saw Dr. Hornaday on September 22, 2016, he recommended that Rees use the Fluocinonide cream that was labeled "for external use only" in his mouth. The next month, Dr. Hornaday berated Rees for continuing to complain when there was nothing wrong with his tongue, yet the same day Dr. Marandet determined that a referral to Dr. Alderman was needed. These allegations, taken together, state a plausible claim of deliberate indifference to Rees' serious medical need.

Likewise, giving Rees the inferences to which he is entitled, he has plausibly alleged that Dr. Marandet was deliberately indifferent to his serious medical needs. Dr. Marandet approved the ordering of the Fluocinonide for use in Rees' mouth even though the medication was "for external use only." And, he prescribed the use of this medication even after Rees reported that he had used it and became ill. Likewise, he directed Rees to use the Mary's Magic Portion

Mouthwash even when he knew it was ineffective. Continuing to treat a serious medical condition with treatment known to be ineffective is deliberately indifferent. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). Furthermore, it can plausibly be inferred that Dr. Marandet was aware of Rees' numerous requests for medical care over an extended period of time, yet did not respond to Rees' pleas for help in an effective or timely manner. Additionally, Dr. Marandet told Rees on October 26, 2016, that he needed to be seen by Dr. Alderman again. And, on December 19, 2017, Dr. Marandet told Rees that he would be seeing an outside specialist. Rees, however, was never sent back to Dr. Alderman and never saw an outside specialist.

Unlike Drs. Horanday and Marandet, it cannot be plausibly inferred that Dr. Alderman was deliberately indifferent to Rees' condition. Dr. Alderman, located at the IYC, was unaware of Rees' numerous requests for medical care. He merely performed the February 2016 biopsy and August 2016 excision. While Dr. Alderman may be faulted for recommending Fluocinonide despite its labeling, this alone can at best be viewed as negligence. Mere negligence does not violate the constitution. *Pierson*, 391 F.3d at 902.

Ultimately, Rees' claims against Drs. Hornaday and Marandet may prove to be mere negligence too. But, at this stage, giving Rees the benefit of the doubt, the claims will be permitted to proceed. Further factual development may show that the treatment Rees received was reasonable under the circumstances. However, accepting his allegations as true, he has alleged enough to proceed further against Drs. Hornaday and Marandet.

Rees also named Corizon and Wexford as defendants, but Corizon and Wexford cannot be held liable for damages under § 1983 unless a policy or custom caused the alleged constitutional violation. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). Rees mentions in his complaint that he does not have teeth or dentures, and, in his request for relief, he

asks that he be provided with dentures. Though not in the body of his complaint, the exhibits to the complaint demonstrate that Rees was denied dentures because of a policy of not providing dentures to inmates that have been edentulous greater than two years. (ECF 1-1 at 5). Rees alleges that the lack of dentures contributed to his mouth pain, and that his pain prevented him from eating many foods served at Miami. (ECF 101 at 2.) It can be plausibly inferred from Rees' complaint and the accompanying exhibits that Corizon had a policy that prevents providing dentures to inmates that have been edentulous for two years even if the inmate is having trouble eating due to the lack of dentures. This does state a claim. However, Corizon is no longer the health care provider at Miami, so Rees may seek compensatory and punitive damages from Corizon, but Corizon is not in a position to provide him with dentures. https://www.in.gov/dwd/files/Corizon%20Health%20-%20Statewide%20WARN%20notice.pdf (last visited Feb. 21, 2018). Also, Rees' claim against Wexford fails because Rees' allegations regarding the failure to provide him with dentures predate Wexford's contract with the IDOC. Rees has not alleged that he has requested that Wexford provide him with dentures, that Wexford failed to provide him with dentures, or that Wexford follows the same policy regarding providing dentures that Corizon followed.

Next, Rees has named Nurse Frye as a defendant. Rees has not alleged a claim against Nurse Frye in her individual capacity because the facts alleged in the complaint do not plausibly support a claim that she was deliberately indifferent to Rees' medical needs. The complaint indicates only that she was present when Dr. Hornaday berated Rees for continuing to complain when nothing was wrong with his tongue, and that she, along with Dr. Hornaday, decided to refer Rees to Dr. Marandet on October 26, 2016. The exhibits also demonstrate that Nurse Frye responded to a request for interview by telling Rees that, if he did not meet the criteria for

dentures, there is nothing she could do. To the extent that Rees seeks to hold Nurse Frye liable in her official capacity for enforcing Corizon's policy, that claim is merely duplicative of Rees' claim against Corizon. *See Grund v. Corizon,* No. 1:16-CV-00096-TWP-MJD, 2017 WL 3894958, at *6 (S.D. Ind. Sept. 6, 2017)(citing *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978) and *DeGenova v. Sheriff of DePage County*, 209 F.3d 973, 974 n.1 (7th Cir. 2000)).

Last, Rees has sued Roberta Gwillim, Director of Nursing at Miami. The body of the complaint, however, makes no mention of Nurse Gwillim. Documents attached to Rees' complaint demonstrate that Nurse Gwillim was contacted by the grievance specialist and provided information about Rees' care, but nothing in the complaint suggests that Nurse Gwillim treated Rees for his condition or was otherwise involved in the refusal to provide him with timely and adequate medical care. Because Rees does not indicate that Gwillim was personally involved in his care, she will be dismissed. *See Whitford v. Boglino*, 63 F.3d 527, 530-31 (7th Cir. 1995).

For these reasons, the court:

(1) GRANTS Jimmy D. Rees leave to proceed against Dr. Matthew Hornaday and Dr. Noe Marandet in their individual capacities for compensatory and punitive damages on an Eighth Amendment claim for deliberate indifference to his serious medical needs;

(2) GRANTS Jimmy D. Rees leave to proceed against Corizon Medical Services for compensatory and punitive damages on his claim that it has an unconstitutional policy of denying dentures to inmates that have been edentulous for two years, even when that inmate has difficulty eating without dentures;

(3) DISMISSES all other claims;

(4) DISMISSES Dr. Rob Alderman, Lynn Frye, Roberta Gwillim, and Wexford Health Sources, Inc.;

(5) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Dr. Matthew Hornaday, Dr. Noe Marandet, and Corizon Medical Services at the Indiana Department of Correction with a copy of this order and the complaint as required by 28 U.S.C. § 1915(d); and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Dr. Matthew Hornaday, Dr. Noe Marandet, and Corizon Medical Services respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on February 22, 2018.

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT